UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In the Matter of :

    Establishment Inspection of :  NO. *18-1770*
    LM Smoyer Brass Products, Inc.

    :

    A manufacturing operation
    consisting of one or more :
    buildings located at:
    1209 W. Lehigh Street :
    Bethlehem, PA 18018
    Lehigh County :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## APPLICATION FOR INSPECTION WARRANT UNDER THE
## OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970

        Jean G. Kulp, Area Director, Allentown Area Office, Occupational Safety and Health Administration (hereinafter referred to as "OSHA"), United States Department of Labor, hereby applies for an inspection warrant, pursuant to Section 8(a) of the Occupational Safety and Health Act of 1970 (29 U.S.C. 651, et seq., hereinafter referred to as "the Act"), for the inspection and investigation of the worksite described in the above caption and as grounds for the issuance of the warrant, after first being duly sworn, deposes and says that:

        1. I am the Area Director of the Allentown Area Office of OSHA, and in that capacity, supervise the inspection activities of OSHA's Compliance Safety and Health Officers within the jurisdiction of the Allentown Area Office. Moreover, I have the responsibility of making applications for inspection warrants under Section 8 of the Act, 29 U.S.C. 657.

        2. LM Smoyer Brass Products, Inc. is a corporation with an office and workplace located at 1209 West Lehigh Street Bethlehem, Pennsylvania 18018, and is engaged in the business of manufacturing brass products.

        3. LM Smoyer Brass Products, Inc. uses materials, supplies and equipment manufactured in states other than Pennsylvania and is engaged in a business affecting commerce within the meaning of Section 3(3) of the Act, 29 U.S.C. 652(3). LM Smoyer Brass Products, Inc. employs a number of employees at the establishment referred to above and is an employer within the meaning of Section 3(5) of the Act, 29 U.S.C. 652(5).

        4. The establishment described in the caption was selected for a health inspection pursuant to the relevant administrative criteria set forth in OSHA's National Emphasis Program ("NEP") on Primary Metal Industries (OSHA Instruction CPL 03-00-018). See Exhibit A attached hereto.

5. Pursuant to Section XI, paragraph B.1. of the NEP on Primary Metal Industries, the intent of the NEP is to target workplaces in the primary metal industries in order to significantly reduce/eliminate worker overexposure to both chemical and physical stressors and, therefore, to control the health hazards associated with such exposure while maximizing OSHA's inspection resources. See Exhibit A.  Section XII(A)(1) of the NEP lists the target industries by the Standard Industrial Classification ("SIC") code and North American Industry Classification System (NAICS). Area and Regional Offices are to ensure that they schedule and conduct enforcement activities following the guidelines set forth in CPL 02-00-051, Enforcement Exemptions and Limitations under the Appropriations Act using the most recent listing of the North American Industry Classification System (NAICS) codes found in Appendix A of CPL 02-00-051.

6. OSHA National Office prepares a master list of establishments using the most recently available Dun & Bradstreet employer list and the identified SIC codes referenced in Section XII (A)(1)(a) of CPL 03-00-018 . Each Area and Regional Office then processes additions and deletions to the master list pursuant to paragraphs 3 of Section XII (A).

7. The master list is randomized by the National Office before it is provided to the area office. Once additions and deletions are completed, inspection cycles are created by breaking the large table down to cycles of 5 to 10 establishments. Inspections are then scheduled using the first cycle list. Establishments on the cycle list may be inspected in any order, so that Area Office resources are efficiently used. Once a cycle has begun, all establishments in the cycle will be inspected before a new cycle begins (with an exception for carryovers, as permitted and provided in OSHA Instruction CPL 02-00-025, at paragraph B.l.b.(l)(e)(l)).

8. The Allentown Area Office prepares a Random Order Listing using criteria set forth above and provided to the Area Office. The list for Primary Metal Industry inspections consists of 4 pages of establishments.

9. By application of the neutral and reasonable administrative procedures set forth in paragraphs 5 through 8, supra, the establishment described in the above caption was selected for inspection as part of the establishment group listed on page 2 of 4 of the Random Order Listing as prepared for the Allentown Area Office under the REP for Primary Metal Industries. The lists are confidential information for OSHA administrative use only and its disclosure may violate Section 17(f) of the Act. However, the lists are available for *in camera* review by this court upon request. Therefore, administrative probable cause exists for a comprehensive health inspection of the worksite described in the caption.

10. On October 24, 2018, Compliance Safety and Health Officer (CSHO) Randy Caldarelli attempted to enter the above referenced establishment for the purpose of conducting an inspection under the NEP on Primary Metal Industries.

11. The authority for issuance of the inspection warrant is Section 8(a) of the Act (29 U.S.C. 657(a)). Section 8(a)(1) and 8(a)(2) of the Act (29 U.S.C. 657(a)(1) and 657(a)(2)) specifically authorize the Secretary of Labor to make inspections and investigations at any reasonable time, at any plant, factory, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer.

12. Section 5(a)(1) of the Act, (29 U.S.C. 654(a)(1)), places a duty upon an employer to provide "employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." Section 5(a)(2) of the Act (29 U.S.C. 654(a)(2)) obliges an employer to comply with safety and health standards enforced pursuant to the Act. These duties of the employer are to be enforced by a system of inspections made by the Secretary or his representatives. It is provided that:

> In order to carry out the purposes of this Act, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized ---

(1)  to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2)  to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

13. The inspection and investigation will be conducted during regular working hours, within reasonable limits, and in a reasonable manner. The compliance officer's credentials will be presented to the employer, and the inspection and investigation will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness.

14. The inspection and investigation will be a health inspection of the LM Smoyer Brass Products, Inc. workplace pursuant to the provisions set forth in Section XIV, of the NEP on Primary Metal Industries. The inspection will extend to the establishment, or other areas where work is performed by employees of the employer and to all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, and all other things therein bearing on whether this employer is furnishing its employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to its employees, and whether this employer is complying with the occupational safety and health standards promulgated under the Act and the rules, regulations and orders issued pursuant to the Act.

15. The inspection and investigation shall also include the taking of photographs and/or videotaping for evidentiary purposes, and the questioning of employees privately during working hours on the worksite, as is authorized by 29 C.F.R. 1903.7(b).

16. The inspection shall also include the affixing of monitoring devices upon employees to determine the extent of their exposure to airborne contaminants and/or noise as is authorized by 29 C.F.R. § 1903.7(b).

3

17.    The inspection and investigation shall also include the opportunity for a representative of the employer and a representative authorized by employees to accompany the compliance officer during the physical inspection of the workplace, or the compliance officer shall consult with employees concerning matters of health and safety in the workplace if there is not an authorized representative of employees pursuant to Section 8(e) of the Act (29 U. S. C. 657(e)) and 29 C.F.R. 1903.8.

18. The inspection and investigation of the worksite described in the caption shall commence within seven (7) working days (as defined in 29 C.F.R. 1903.21(c)) of the issuance of the warrant and shall proceed for a reasonable number of working days following the initiation of the inspection.

19. A return will be made to the court within seven (7) working days after the completion of the inspection.

Jean G. Kulp, Area Director
Allentown Area Office
Occupational Safety and Health
Administration
United States Department of Labor

OF COUNSEL:

Kate S. O'Scannlain
Solicitor of Labor

Oscar L. Hampton III
Regional Solicitor

Michael P. Doyle
Regional OSHA Counsel

Post Office Address:

Oscar L. Hampton III
Regional Solicitor
Office of the Solicitor
The Curtis Center, Suite 630 East
170 S. Independence Mall West
Philadelphia, PA 19106
(215) 861-5120

4

*Exhibit A*



# OSHA INSTRUCTION

**U.S. DEPARTMENT OF LABOR    Occupational Safety and Health Administration**

| **DIRECTIVE NUMBER:** CPL 03-00-018 | **EFFECTIVE DATE:** October 20, 2014 |
|---|---|
| **SUBJECT:** National Emphasis Program – Primary Metal Industries | |

**\*\*NOTE: As a result of the July 9, 2015, issuance of CPL 02-02-079,
Inspection Procedures for the Hazard Communication Standard (HCS 2012),
minor changes {in brackets} were made to this directive on January 1, 2016.
These changes do not impact this directive's enforcement policy.**

## ABSTRACT

**Purpose:**     This Instruction describes policies and procedures for implementing a National Emphasis Program to identify and reduce or eliminate worker exposures to harmful chemical and physical health hazards in facilities in the Primary Metal Industries.

**Scope:**     This Instruction applies OSHA-wide.

**References:**     OSHA Instruction CPL 02-00-150, April 22, 2011, Field Operations Manual (FOM).

OSHA Notice 14-01 (CPL 02), March 6, 2014, Site-Specific Targeting 2014 (SST-14).

{OSHA Instruction CPL 02-02-079 ~~02-02-038 (CPL 2 2.38D)~~, ~~March 20, 1998~~ July 9, 2015, Inspection Procedures for the Hazard Communication Standard (HCS 2012).}

OSHA Instruction CPL 02-00-158, June 26, 2014, Inspection Procedures for the Respiratory Protection Standard.

OSHA Instruction CPL 02-00-025 (CPL 2.25I), January 4, 1995, Scheduling System for Programmed Inspections.

OSHA Instruction CPL 03-00-007, January 24, 2008, National Emphasis Program – Crystalline Silica.

OSHA Instruction CPL 03-00-009, August 14, 2008, National Emphasis Program – Lead.

Federal Register, Vol. 77, No. 58, pages 17574-17896, March 26, 2012,
Hazard Communication, Final Rule. [HCS 2012]

**Cancellations:** None.

**State Impact:** Notice of Intent and Adoption Required. [State Adoption Summary]

**Action Offices:** OSHA National, Regional and Area Offices, State Plan and State
Consultation Offices

**Originating Office:** Office of Health Enforcement

**Contact:** Directorate of Enforcement Programs
Office of Health Enforcement, N-3119
200 Constitution Avenue, NW
Washington, DC 20210
202-693-2190

By and Under the Authority of

David Michaels, PhD, MPH
Assistant Secretary

ABSTRACT-2

## Executive Summary

OSHA inspection history has shown that individuals employed in the *Primary Metal Industries* are exposed to serious safety and health hazards on a daily basis. Previous inspections of primary metal establishments have resulted in citations for overexposures to a wide variety of health hazards including chemical exposures in foundry operations as well as physical stressors such as noise and heat. This Instruction describes policies and procedures for implementing a National Emphasis Program (NEP) to identify and reduce or eliminate worker exposures in facilities under the *Primary Metal Industries*, such as iron foundries and establishments that manufacture nails, insulated wires and cables, steel piping, and copper and aluminum products. This NEP will also heighten health and safety awareness within the affected industries of the potential for worker exposure to harmful chemical and physical hazards so that employers may voluntarily take steps to correct hazards and comply with current safety and health regulations and practices.

## Significant Changes

This Instruction describes a new initiative by the Occupational Safety and Health Administration.

From May 19, 2011, until September 30, 2014, this was a three-year NEP with required inspection goals. As of October 1, 2014, this Instruction will discontinue the required programmed inspection goals, but it will retain the NEP's inspection procedures, citation guidance, and outreach information for continued reference by Regional and Area Offices as a way to assure that inspections conducted under this Instruction continue to address the health-related hazards in these industries.

Minor changes as of FY 2015:

- Minor revisions to allow Area Offices to determine the number of inspections at their discretion and to delete the NEP expiration date.

- Minor revisions resulting from the HCS 2012 (Hazard Communication, Final Rule, Federal Register, Vol. 77, No. 58, March 26, 2012).

- Minor changes to updated references, such as revised OSHA directives, the new OSHA Information System (OIS), and the North American Industry Classification System (NAICS).

**Table of Contents**

I.      Purpose......................................................................................................................1

II.     Scope.........................................................................................................................1

III.    References.................................................................................................................1

IV.     Cancellations.............................................................................................................1

V.      Action Offices...........................................................................................................1

VI.     Federal Program Change...........................................................................................2

VII.    Expiration..................................................................................................................2

VIII.   Significant Changes ..................................................................................................2

IX.     Application................................................................................................................3

X.      Background ...............................................................................................................3

XI.     National Emphasis Program Goals ...........................................................................3

XII.    Program Procedures ..................................................................................................4

XIII.   Outreach....................................................................................................................6

XIV.    Inspection Procedures ...............................................................................................7

XV.     Consultation............................................................................................................16


Appendix A - Chemical Exposure Hazards Found in Primary Metal Industries........................ A-1

Appendix B - Primary Metal Industries - SIC/NAICS Codes......................................................B-1

I.   Purpose.  This Instruction describes policies and procedures for implementing a National Emphasis Program (NEP) to identify and reduce or eliminate worker exposures in facilities in the *Primary Metal Industries*, such as iron foundries and establishments that manufacture nails, insulated wires and cables, steel piping, and copper and aluminum products, under Major Group 33 in the Standard Industrial Classification (SIC) Manual, and now under the North American Industry Classification System (NAICS).  This NEP will also heighten health and safety awareness within the affected industries of the potential for worker exposure to harmful chemical and physical health hazards so that employers may voluntarily take steps to correct hazards and comply with the applicable safety and health standards.

II.  Scope.  This Instruction applies OSHA-wide.

III. References.

   A.   OSHA Instruction CPL 02-00-150, April 22, 2011, Field Operations Manual (FOM).

   B.   OSHA Notice 14-01 (CPL 02), March 6, 2014, Site-Specific Targeting 2014 (SST 14).

   C.   {OSHA Instruction CPL ~~02-02-038 (CPL 2-2.38D), March 20, 1998~~ 02-02-079, July 9, 2015, Inspection Procedures for the Hazard Communication Standard (HCS 2012).}

   D.   OSHA Instruction CPL 02-00-158, June 26, 2014, Inspection Procedures for the Respiratory Protection Standard.

   E.   OSHA Instruction CPL 02-00-025 (CPL 2.25I), January 4, 1995, Scheduling System for Programmed Inspections.

   F.   OSHA Instruction CPL 03-00-007, January 24, 2008, National Emphasis Program – Crystalline Silica.

   G.   OSHA Instruction CPL 03-00-009, August 14, 2008, National Emphasis Program – Lead.

   H.   Federal Register, Vol. 77, No. 58, pages 17574-17896, March 26, 2012, Hazard Communication, Final Rule.  [HCS 2012]

IV.  Cancellations.  None.

V.   Action Offices.

   A.   Responsible Office.  Directorate of Enforcement Programs, Office of Health Enforcement.

    B.      Action Offices. National, Regional and Area Offices; Consultation Project Managers.

    C.      Information Offices. OSHA National Offices.

VI.    Federal Program Change. Notice of Intent and Adoption Required. This Instruction describes a Federal program change which establishes a new National Emphasis Program (NEP) to identify and reduce or eliminate worker exposures in the primary metal manufacturing facilities under Major Group 33 in the Standard Industrial Classification (SIC) Manual and now under the NAICS. The NEP targeted industries comprise sixteen (16) different SICs in the 33XX metals manufacturing sector, corresponding to 17 different NAICS codes in the 331XXX sector, plus 324199 (coke ovens), as listed in Appendix B. OSHA inspection history indicates that individuals employed in the Primary Metal Industries (smelting and refining of ferrous and nonferrous metals) are exposed to serious safety and health hazards on a daily basis including chemical exposures as well as physical stressors such as noise and heat. Because the seriousness and prevalence of this problem is nationwide, States must participate in this national emphasis effort. The Office of Statistical Analysis will provide each State a list of establishments as set out in paragraph XII.A.2, upon request.

The State's notice of intent must indicate whether the State's emphasis program will be identical to or different from the Federal program. If the State's program differs from the Federal one, its implementing policies and procedures must be at least as effective as those in this instruction and must be available for review. The State may either post its different emphasis program on its State plan website and provide the link to OSHA or provide an electronic copy to OSHA with information on how the public may obtain a copy. If the State's emphasis program is identical to the Federal program, it must provide the date of adoption to OSHA. OSHA will provide summary information on the State responses to this instruction on its Web site. States must code inspections conducted under this NEP in accordance with paragraph XIV.I of this Instruction.

VII.    Expiration. There is no expiration date.

VIII.    Significant Changes. This is a new program. From May 19, 2011, until September 30, 2014, this was a three-year NEP with required inspection goals. As of October 1, 2014, this Instruction will discontinue the required programmed inspection goals, but it will retain the NEP's inspection procedures, citation guidance, and outreach information for continued reference. Minor changes, as of fiscal year (FY) 2015, include:

    A.      Minor revisions to allow Area Offices to determine the number of inspections at their discretion and to delete the NEP expiration date.

    B.      Minor revisions resulting from the HCS 2012 (Hazard Communication, Final Rule, Federal Register, Vol. 77, No. 58, March 26, 2012).

    C.      Minor changes to updated references, such as revised OSHA directives, the new

OSHA Information System (OIS), and the NAICS.

IX. <u>Application.</u> This Instruction applies to all primary metal manufacturing facilities under the SIC/NAICS codes listed in Appendix B.

X. <u>Background.</u>

A. The Primary Metal Industries were identified as a concern during a review of data from the Bureau of Labor Statistics' Census of Fatal Occupational Injuries. The BLS report also showed that five of the top 20 industries with non-fatal occupational injury and illness cases were within these SIC/NAICS codes. The Department of Health information from one state regarding elevated blood lead levels also indicated that the Primary Metal Industries accounted for 26% of the establishments having at least one worker with blood lead levels of 30 µg/100g of whole blood or greater in 2005.

OSHA inspection history indicates that individuals employed in the Primary Metal Industries are exposed to serious safety and health hazards on a daily basis. Previous inspections of primary metal establishments have resulted in citations for overexposures to a wide variety of health hazards including chemical exposures as well as physical stressors such as noise and heat. Chemical exposures found in these facilities include carbon monoxide, lead, silica, metal dusts and fumes, and various other chemical substances. A more extensive list is provided in Appendix A.

The Primary Metal Industries are a group of establishments engaged in the smelting and refining of both ferrous and nonferrous metals. These metals are refined from ore, pig and scrap, during rolling, drawing, casting and alloying metal operations. Some of the products they manufacture include nails, spikes, insulated wires and cables, steel piping, sheets and bars, copper and aluminum products, and coke. These SIC/NAICS codes are listed in Appendix B.

XI. <u>National Emphasis Program Goals.</u>

A. To minimize and/or eliminate worker exposure to the hazards, both physical and chemical, which are known to be present in the primary metal industries. Reduction and/or elimination of chemical exposures will help to reduce and prevent the occurrence of skin and eye injuries as well as occupational lung injury and other illnesses. Reduction of worker exposures to physical hazards will help prevent adverse effects such as hearing loss.

B. To significantly reduce/eliminate worker overexposures to both chemical and physical stressors and, therefore, control the health hazards associated with such exposures. This goal will be accomplished by a combined effort of inspection targeting, outreach to employers, and compliance assistance.

C.    Inspections will be directed to those facilities known to manufacture primary metals and metal products.

D.    To ensure abatement and measure the effectiveness of this NEP, follow-up site visits often will be necessary where overexposures have been documented.

XII.    Program Procedures.

A.    Site Selection.

1.    Targeting Sources.

a.    Inspections conducted under this NEP shall focus on facilities with workers in Major Group 33 of the SIC Manual, and now identified by their corresponding NAICS codes in Appendix B.

b.    When performing programmed inspections under this NEP, each Area Office, in conjunction with the Regional Office, shall develop an inspection master list of establishments in accordance with OSHA Instruction CPL 02-00-025, Scheduling System for Programmed Inspections.

2.    Master List Generation.

a.    Upon request, using the most recently available Dunn and Bradstreet employer list, the Office of Statistical Analysis (OSA) will prepare a list based on a random number table (RNT) (see CPL 02-00-025) of establishments in the SIC/NAICS codes mentioned in Appendix B. Each establishment on the resulting establishment list will be assigned a sequential number, starting at the top of the list with number one. OSA will then provide to each Area Office a list of establishments in these SIC/NAICS codes within the Area Office's geographical jurisdiction.

b.    Whenever an office becomes aware of a previously unknown manufacturing establishment within any of the identified SIC/NAICS codes, the establishment shall be added to the list.

c.    Establishments with fewer than ten employees shall also be included in this NEP.

3.    Deletions.

a.    Based on their familiarity with local industries, Regional and Area offices shall delete from the master list any firms known to be out of business.

4

b.      The Regional and Area Offices shall also delete any establishment that has had an inspection where worker exposures have been evaluated within the previous two (2) years, provided either that no serious violations related to chemical or noise exposures were cited or that serious violations were cited but a follow-up inspection documented effective abatement of the cited conditions.

4.  When performing programmed inspections under this NEP, each Area Office shall conduct inspections from the list of establishments in the SICs/NAICS codes contained in Appendix B. Inspections shall be scheduled in the order called for by the random number table.

5.  The establishment list generated under this NEP shall be maintained in the Regional/Area Offices for a period of three years. (See OSHA Instruction ADM 03-01-005, OSHA Compliance Records.)

B.   Complaints and Referrals.

Complaint or referral inspections alleging worker exposure to any other hazards at facilities in these SICs/NAICS codes may be expanded to address the issues covered under this NEP. For further guidance, CSHOs should refer to CPL 02-00-150, Field Operations Manual (FOM).

C.   Programmed Inspections.

As of October 1, 2014, this Instruction will discontinue the required programmed inspection goals, but it will retain the NEP's inspection procedures, citation guidance, and outreach information for continued reference.

Some establishments may be selected for inspection under the current SST plan or also under one or more other OSHA enforcement initiatives (National Emphasis (NEP) or Local Emphasis (LEP) Programs). This NEP, which is based on exposure hazards in the Primary Metal Industries, shall be run **concurrently** with the SST plans.

Whenever an establishment is scheduled for inspection on the current cycles of both the NEP plan and the current SST program plan, the inspections may be scheduled at the same time. CSHOs shall use all IMIS/OIS codes applicable for the inspection. The employer's DUNS number shall also be recorded for each inspection.

In cases where an establishment has been scheduled for inspection under both the SST Plan and this NEP, an inspection limited in scope to the health issues targeted by the NEP shall be conducted even if all CSHO-calculated Days Away, Restricted, or Transferred (DART) rates for the establishment are found to be

5

below the current SST Plan inspection thresholds.  Other NEPs and/or LEPs may also run concurrently with this NEP.

D.    Expanding Scope of Inspection.

Inspections under this NEP shall normally be limited to evaluating worker exposure to physical and chemical hazards described in this Instruction. However, a CSHO may expand the scope of the inspection if other safety and health hazards or violations are observed and/or brought to their attention.  The CSHO shall follow the guidelines in the FOM when expanding the scope of any inspection.

XIII.   Outreach.

A.    Each Area Office/Region is encouraged to develop outreach programs that will support their enforcement efforts.  Suggested outreach activities are as follows:

1.    Letters, news releases by local and national news organizations, and trade magazines can assist with disseminating information about this NEP.

2.    Local hospitals, occupational health clinics, and local occupational physicians should be alerted via mail about occupational exposure to lead, silica and other hazards associated with them, if they have not been contacted previously.

3.    Compliance Assistance Specialists (CAS) should conduct outreach activities such as seminars/informational sessions for the health care sector and employer groups, as well as worker groups (this would include national and local unions).

OSHA's compliance assistance resources for this industry include:

a.    Respiratory Protection eTool and Safety and Health Topics Page

b.    Personal Protective Equipment Safety and Health Topics Page

c.    Noise and Hearing Conservation eTool and Safety and Health Topics Page

d.    Heat Stress Safety and Health Topics Page
e.    Silica eTool and Safety and Health Topics Page

f.    Hazard Communication Safety and Health Topics page

g.    Secondary Lead Smelter eTool

6

h. Lead Safety and Health Topics Page

4. Area Offices should attempt to establish Partnerships and Alliances with groups representing employers and workers in the Primary Metal Industries to share successes and technical information concerning effective means of controlling and reducing worker exposures.

5. Small businesses should contact OSHA's On-Site Consultation Program. OSHA's On-Site Consultation Service offers free and confidential advice to small and medium-sized businesses in all States across the country, with priority given to high-hazard worksites. On-site Consultation services are separate from enforcement and do not result in penalties or citations. Consultants from state agencies or universities work with employers to identify workplace hazards, provide advice on compliance with OSHA standards, and assist in establishing safety and health management systems. Additional information about the On-Site Consultation Program can be found on the web at www.osha.gov/dscp/smallbusiness/consult.html.

## XIV. Inspection Procedures.

This section outlines procedures for conducting inspections and preparing citations for hazards related to worker exposures. For further guidance, CSHOs should consult the OSHA directives, appendices, and other references provided below.

A. Opening Conference.

1. During the opening conference, the CSHO shall initially confirm that the employer falls under the SIC/NAICS classification of a primary metal industry. If the SIC/NAICS code of the establishment is not included in Appendix B, the CSHO will exit the facility (if there is no other reason to inspect the employer) and no inspection shall be conducted under this NEP.

2. CSHOs should explain the goals of this NEP to the employer.

3. CSHOs should request information on any hazard analyses performed at the facility for the following:

a. 29 CFR 1910.132(d) Hazard assessment and equipment selection: OSHA's Personal Protective Equipment (PPE) standards require employers to assess their workplaces to determine if hazards are present, or are likely to be present, that necessitate the use of PPE (29 CFR §1910.132). If such hazards are present or are likely to be present (as determined by the information from Material Safety Data Sheets (MSDSs) or Safety Data Sheets (SDSs) or observable workplace conditions), employers must ensure that workers use the

7

appropriate PPE to protect their eyes, face, hands and extremities, depending on the nature of the hazard (29 CFR §§1910.132, .133, .138). The employer is responsible for both the quality of the hazard assessment and the adequacy of the PPE selected.

b.   29 CFR 1910.134(d) Selection of Respirators: Employers in the primary metal industries with potential respiratory hazards are required to conduct the evaluation required by §1910.134(d)(1)(iii) of the Respiratory Protection standard.

The hazard evaluation requirement is performance-oriented, and a variety of estimation techniques may be used to characterize worker exposures, depending upon the nature of the chemical products, processes, operating environment, and other factors.

Where a substance is used that may pose a respiratory hazard (see MSDSs/SDSs for chemical substance in use), the employer must assess the nature and magnitude of the hazard relative to the conditions of use in its workplace, considering both normal operating conditions and reasonably foreseeable emergencies.

c.   29 CFR 1910.1200(d) Hazard classification: OSHA's Hazard Communication standard requires that employers who choose not to rely on the classification of a hazardous chemical performed by a chemical manufacturer or importer, must conduct their own evaluation to classify the chemical in accord with §1910.1200(d)(2), and consider the available scientific evidence concerning that chemical. Otherwise, employers can rely on information from the MSDS/SDS.

B.   Walkaround and Records Review.

1.   MSDS/SDS. CSHOs should review the MSDSs/SDSs for chemicals used and/or manufactured at the facility to ensure they are in compliance with the requirements of 29 CFR 1910.1200(g). If any deficiency is found for any chemicals not manufactured at the workplace, referrals should be made to the appropriate Area Office in whose jurisdiction the manufacturer or upstream supplier is located pursuant to {OSHA Instruction CPL 02-02-038 (CPL-2-2.38D) 02-02-079 - Inspection Procedures for the Hazard Communication Standard (HCS 2012).}

2.   Injury/Illness Records. CSHOs should review the employer's injury and illness records to identify any workers with recorded illnesses or symptoms associated with exposure to chemical or physical hazards. CSHOs should investigate log entries for any type of respiratory issues, hearing loss, or other evidence of adverse health effects. Skin or eye

injuries involving chemicals should also be investigated.

3.  Medical Access Orders. Based on information obtained from illness/injury records and interviews, CSHOs may need to review additional worker medical information. When accessing worker medical information, CSHOs should follow the procedures in 29 CFR 1913.10 and obtain a written medical access order. CSHOs may also consider obtaining specific written consent from a worker pursuant to 29 CFR 1910.1020(e)(2)(ii), and should ensure that the agency or agency worker is listed on the consent form as the designated representative to receive the information.

4.  Production Process Evaluation. CSHOs should request and review the employer's production and processing records.

    a.  Document the types and quantities of chemicals used, what processes are involved, and the frequency of use.

    b.  Evaluate and document the extent of engineering controls relative to the processes, the work practices implemented, and any protective equipment used during these operations.

        Primary means for controlling exposures include local exhaust ventilation to remove contaminants at their source, enclosing production processes or exposure sources, isolation of the processes or exposure sources, substitution of less hazardous materials and general dilution ventilation.

    c.  Evaluate workers' respirator usage, if any, and request a copy of the employer's respiratory protection program.

    d.  Evaluate personal air and noise monitoring records conducted by the employer.

5.  Exposure Monitoring. CSHOs shall normally conduct full-shift personal air monitoring and/or short-term personal air monitoring as appropriate. For some chemicals, monitoring to assess short-term exposure limits (STELs), ceiling (C) or OSHA Permissible Exposure Limits (PELs) may be necessary. If the employer has conducted representative sampling in the previous six months, which shows no overexposures for all processes that have a potential for worker exposures, and any changes in the process are not likely to have increased exposures, the CSHO shall do screening sampling of the work operation(s) with the highest potential exposures to determine if additional sampling is necessary. When reviewing the employer's sampling, ensure that all job functions and the heaviest production shifts have been evaluated.

a.  CSHOs shall use the available MSDSs/SDSs, production and process information in determining whether additional monitoring for other chemicals should be performed.

b.  Significant concentrations of airborne contaminants may be encountered in many operations in the primary metal industries. Processes that should be evaluated include but are not limited to: handling of scrap, the smelting process, the treatment and inoculation of molten metal before pouring, core- and mold-making processes, pouring molten metal, cooling of casts, casting knockout, casting finishing operations, and the clean-out and re-lining of furnaces.

6.  CSHO Protection.

CSHOs conducting these inspections should have some training or experience in the primary metal industry. CSHOs must don the appropriate PPE before entering any hazardous areas. Hard hat, safety shoes, safety glasses (or goggles), and hearing protection will usually be required when inspecting any of these areas.

CSHOs must remain at least twenty feet from melting and pouring operations.

When inspecting melting and pouring operations, CSHOs should avoid the use of urethane foam earplugs, which may be combustible.

CSHOs shall wear long sleeve cotton shirts and long pants. They should not wear polyester, nylon or other manmade fabrics that can melt or readily ignite. Fire-resistant clothing is encouraged. In most foundry areas, long sleeve cotton coveralls which have no outside pockets or cuffs should be worn. Pant legs must cover the top of the boot edge.

CSHOs are not anticipated to be handling chemicals in foundries; however, the presence of airborne gases, fumes, and caustics, which may cause dermal irritation require the use of gloves. Leather gloves are mildly chemical resistant and heat tolerant. Where chemical exposures are found to be higher than average, treated leather or Kevlar gloves should be worn. Sleeves must cover the cuff of the glove. CSHOs should not tuck sleeves into the cuffs of the gloves. When the arm is fully extended, the cuff of the glove and sleeve must not allow bare skin to be exposed.

Impact and chemical-resistant goggles are appropriate for these industries. Safety glasses with side shields are not recommended in the presence of and potential exposure to caustics, corrosives, dusts and acid. Impact resistance is required since the industry has the potential for flying and

10

falling debris. Where molten ferrous metal operations must be viewed for a significant length of time, #3-#5 green goggles (or #3-#5 safety glasses under goggles) should be worn.

Respiratory protection may also be required in many work areas. A list of potential contaminants is found in Appendix A. When in the vicinity of operations where the presence of silica is known or suspected, CSHOs shall wear a half-mask or full face respirator equipped with N100 cartridge(s). If other respiratory hazards exist, CSHOs shall wear the appropriate combination cartridge.

CSHOs should discuss the need for further PPE with their Team Leader or Area Director.

C.     Citation Guidance.

     1.     OSHA PELs.

        Where exposures are in excess of the permissible exposure limits (PELs), ceiling limits (C) or STELs, for substances listed in Tables Z-1, Z-2, or Z-3 of 29 CFR 1910.1000, cite the applicable sections of 29 CFR 1910.1000.

     2.     Engineering and Work Practice Controls.

        If an employer has failed to implement administrative, engineering or work practice controls where feasible for reducing exposures to levels below the PEL, the CSHO shall usually cite 1910.1000(e), or the appropriate engineering control section of the substance-specific standard.

     3.     Respirator Standard.

        a.     If there are respiratory hazards present at the work site and employers have failed to conduct the initial respiratory hazard evaluation, cite 29 CFR 1910.134(d)(1)(iii).

        b.     Where workers are required to use respirators, but the employer has failed to comply with a requirement in the respirator standard, cite the applicable sections of 29 CFR 1910.134.

            •     Inspection and citation guidance are provided in CPL 02-00-158, Inspection Procedures for the Respiratory Protection Standard.

     4.     Personal Protective Equipment (PPE) Standards.

        Pursuant to §1910.132(d), the employer must conduct a hazard assessment

11

to determine if hazards are likely to be present that necessitate the use of PPE and have a written certification that the assessment was conducted.

Where chemicals having irritant properties are present, PPE is not being used or is inadequate, and workers' eyes and/or skin are potentially exposed to such chemicals, cite the applicable PPE standard (29 CFR §§1910.132, .133, .138).

    a.    Chemical goggles or other appropriate eye protection must be used when there is a potential for splash or vapor exposure to a substance that is likely to cause injury to the eye.

    b.    Chemical-resistant gloves, or sleeves or other appropriate protection for exposed skin must be used when handling liquid, paste, or powdered substances that could cause dermal injury. CSHOs should consult the MSDS/SDS for the appropriate type of gloves and/or the glove chart in OSHA PPE Publication 3151-12R, 2003.

    c.    The employer must also provide training for exposed workers as indicated in 29 CFR 1910.132. This training must include information on when and how to use appropriate PPE.

    d.    In addition, employers must provide information on the value, limitations and maintenance of this equipment in accordance with 29 CFR §§1910.132 and .134.

5.    Occupational Noise Standard.

    a.    At levels at or above an 8-hour time-weighted-average (TWA) of 85 dBA, an effective hearing conservation program must be implemented. The program must be evaluated for completeness and effectiveness of implementation.

    b.    Where noise levels are above the 90 dBA TWA, hearing protection must be worn by all exposed workers until engineering or administrative controls reduce exposures to below the PEL. Workers who have already experienced a standard threshold shift must wear hearing protection at levels at or above 85 dBA TWA. Cite the applicable paragraph under 1910.95(i)(2).

    c.    When hearing protection is required, employers must make a variety of hearing protectors available at no cost to the workers.

6.    Expanded Health Standards. Compliance with the elements of the expanded health standards shall be evaluated, if exposures are found to chemicals, such as Lead, §1910.1025, or Cadmium, §1910.1027.

12

D.   Other Applicable Requirements.

    1.   Hazard Communication.

        a.   Workers who may be exposed to chemicals are required to be trained on the hazards of the chemicals in the workplace pursuant to 29 CFR 1910.1200(h)(3).

        b.   Workers must be informed of the signs and symptoms of any respiratory, skin or eye conditions associated with exposures to hazardous chemicals in the workplace.

        c.   Employers must ensure that all MSDSs/SDSs are readily accessible to workers. CSHOs should ensure that all containers are labeled with the appropriate hazard warnings.

            Citation Guidance: Detailed inspection and citation guidance, including guidance on how to address inadequate MSDSs/SDSs, is contained in {OSHA Instruction CPL 02-02-079 ~~02-02-038 (CPL 2-2.38D)~~-Inspection Procedures for the Hazard Communication Standard (HCS 2012).

            ~~Note:  CPL 02-02-038 will soon be revised because of the recent Final Rule for Hazard Communication (77 Fed. Reg. 17574-17896, March 26, 2012), i.e., HCS 2012.  Until then, CSHOs shall note the employer's compliance with the effective dates of applicable provisions in the HSC 2012, listed in paragraph 1910.1200(j).  For specific guidance, contact the Office of Health Enforcement.~~ }

    2.   Housekeeping and Hygiene Practices.

        a.   Determine whether the employer's housekeeping and hygiene practices may contribute to overexposure. For example:

            • Exposed surfaces should be as free as practicable of hazardous dusts, such as lead and chromium (bulk samples of the dust may need to be collected).

            • Contaminated surfaces should not be blown clean with compressed air or other forced air (such as leaf blowers).

            • If vacuuming is used for cleaning, the exhaust air should be properly filtered to prevent release of contaminants back into the workroom.

            • There should be separate break areas for consuming food and beverages that are kept free of harmful dusts.

- Clothes contaminated with hazardous dusts should not be blown or shaken to remove dust.

    b.    Document poor housekeeping and hygiene practices.

3.    <u>Access to Employee Exposure and Medical Records.</u>

    a.    Interview workers to determine whether they were informed of their right to review their medical and exposure records annually and understand their rights regarding the confidentiality of such records.

    b.    Review the employer's recordkeeping program to ensure that the required information is being collected and reported.

    c.    Evaluate the employer's method for ensuring the confidentiality of worker medical records.

    d.    When it is necessary to review worker medical records, ensure that they are obtained and remain confidential in accordance with §1913.10 and §1910.1020.

    Citation Guidance:  If violations are found, CSHOs should cite the applicable section of §1910.1020.  These rules do not require the creation of any records, only preservation and access requirements.

    Recent revisions to recordkeeping policies and procedures are described in CPL 02-00-135, Recordkeeping Policies and Procedures Manual.

4.    <u>Heat Stress.</u>

    Engineering, administrative and work practice controls should be evaluated in areas where there is a potential for heat stress (e.g., furnaces) and/or when cases of heat stress are recorded on the OSHA 300. Investigation guidelines and other information can be found in the OSHA Technical Manual, Section III, Chapter 4, Heat Stress.

E.    <u>Follow-up Inspections.</u>

Where citations are issued for overexposures, or abatement documentation provided by the employer for other serious citations is not adequate, follow-up site visits shall be conducted to determine whether the employer is eliminating exposures or reducing exposures below the PEL.  Where exposures could not feasibly be reduced below the PEL, engineering and administrative controls must still have been implemented to reduce exposures to the extent feasible, and workers provided with adequate respiratory protection and other appropriate PPE where necessary.

14

F.  Program Evaluation.

This NEP will be evaluated using data collected from case files and follow-up site visit reports submitted by each Area Office to the Regional Offices. The data will be evaluated to determine the impact of OSHA inspections on the reduction of exposures at each work site. Each Region shall designate an individual who will work with the Office of Health Enforcement.

G.  Coordination.

1.  National Office. This NEP will be coordinated by the Directorate of Enforcement Programs (DEP) - Office of Health Enforcement (OHE). All questions and comments should be directed to the Office of Health Enforcement. OHE will coordinate with the Directorate of Technical Support and Emergency Management (DTSEM), Office of Occupational Medicine (OOM) and other offices for assistance as needed.

2.  Regional Office. Each Regional Administrator is required to identify a coordinator for this NEP.

H.  Federal Agencies. Executive Order 12196, Section 1-201, and 29 CFR 1960.16 require Federal Agencies to follow the enforcement policy and procedures contained in this Directive.

I.  IMIS/OIS Coding Instructions. The instruction below is for recording inspections under this NEP. The majority of inspections conducted under this NEP will be "Health" inspections and should be coded as such. When this NEP is conducted in conjunction with an SST inspection, the OSHA-1 Forms shall be marked as "programmed planned" in item 24, and in item 21, Inspection Category shall be recorded as "H". In addition, the "NEP" value of "SSTARG___" shall be recorded in Item 25d along with the NEP code "PMETALS".

If during an SST inspection (or other safety-related inspections) it is determined the SIC should be one of the 3300 SICs, the NEP code for "PMETALS" shall be recorded.

This new "PMETALS" code applies to the following enforcement forms: OSHA-1, OSHA-7, OSHA-36, OSHA-90 and OSHA-55 (and the corresponding OIS pages/tabs).

Whenever a consultation visit is made in response to this NEP, Consultation request/visit forms are to be completed with the NEP code "PMETALS" in item 25 on Form-20, and in item 28 on Form-30 (and the corresponding OIS pages/tabs).

15

XV.    <u>Consultation.</u>  Regional and Area Offices are encouraged to work with their State OSHA Consultation Office to communicate the goals of this NEP.  When appropriate, 21(d) Consultation Projects are encouraged to develop and conduct their own outreach activities to address exposures to physical and chemical hazards.

Appendix A
Chemical Exposure Hazards Found in Primary Metal Industries

acrolein
ammonia
antimony
arsenic
asbestos
benzene
2-butoxyethanol
carbon dioxide
carbon monoxide
chlorine
chromium
coal tar pitch volatiles
copper fume
dimethylamine
dimethyl ethylamine
formaldehyde
furfuryl alcohol
hydrogen chloride
hydrogen sulfide
iron oxide
isocyanates
isopropyl alcohol
lead
methane
methyl alcohol
methyl formate
methylene bisphenyl isocyanate
molybdenum
naphthalene

nitric acid
nitrogen
nuisance dust
ozone
phenol
polycyclic aromatic hydrocarbons
propane
silica
sulfuric acid
sulfur dioxide
tetraethyl lead
toluene
vanadium
wood dust
xylene
zinc oxide

metal dusts including:
   iron
   aluminum
   manganese
   beryllium
   cadmium
   tin
   copper
   silver
   nickel
   lead

## Appendix B
## Primary Metal Industries - SIC/NAICS Codes

The Primary Metal Industries (PMI) are a group of establishments engaged in the smelting and refining of both ferrous and nonferrous metals. These metals are refined from ore, pig, and scrap, during rolling, drawing, casting, and alloying metal operations. Some of the products they manufacture include nails, spikes, insulated wires and cables, steel piping, sheets and bars, copper and aluminum products, and coke. These SIC/NAICS codes include:

> 3312 – Steel Works, Blast Furnaces (including Coke Ovens), and Rolling Mills
> (NAICS 324199, 331111, 331221)
> 3313 – Electrometallurgical Products Except Steel
> (NAICS 331112)
> 3316 - Cold-Rolled Steel Sheet, Strip and Bars
> (NAICS 331221)
> 3317 - Steel Pipe and Tubes
> (NAICS 331210)
> 3321 – Gray and Ductile Iron Foundries
> (NAICS 331511)
> 3322 – Malleable Iron Foundries
> (NAICS 331511)
> 3325 – Steel Foundries, Not Elsewhere Classified
> (NAICS 331513)
> 3331 – Primary Smelting and Refining of Copper
> (NAICS 331411)
> 3334 – Primary Production of Aluminum
> (NAICS 331312)
> 3339 – Primary Smelting and Refining of Nonferrous Metals, Except Copper and
> Aluminum (NAICS 331419)
> 3341 – Secondary Smelting and Refining of Nonferrous Metals
> (NAICS 331314, 331423, 331492)
> 3351 – Rolling, Drawing and Extruding of Copper
> (NAICS 331421)
> 3354 – Aluminum Extruded Products
> (NAICS 331316)
> 3366 – Copper Foundries
> (NAICS 331525)
> 3365 – Aluminum Foundries
> (NAICS 331524)
> 3369 – Nonferrous Foundries Except Aluminum and Copper
> (NAICS 331528)